**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

SOUTH CAROLINA GAMBLING
RECOVERY LLC,

    Plaintiff,

        v.

KALSHI INC. et al.,

    Defendants.

Case No. 8:25-cv-12859-BHH

**PLAINTIFF SOUTH CAROLINA GAMBLING RECOVERY LLC'S
<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

SUMMARY OF ARGUMENT .........................................................................................................1

ARGUMENT ...................................................................................................................................3

I.       This Court Lacks Federal-Question Jurisdiction ..............................................................3

II.      Defendants Improperly Removed Under the Class Action Fairness Act ..........................10

III.     This Court Lacks Diversity Jurisdiction Because the Non-Diverse Entities Were Not
         Fraudulently Joined ..........................................................................................................15

IV.      This Court Should Award Costs and Fees to Plaintiff. .....................................................19

CONCLUSION ..............................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AST & Sci. LLC v. Delclaux Partners SA*,
143 F.4th 1249 (11th Cir. 2025) ..................................................................................7

*Atlas Data Privacy Corp. v. Blackbaud, Inc.*,
757 F. Supp. 3d 605 (D.N.J. 2024)...........................................................................13

*Berg v. Leason*,
32 F.3d 422 (9th Cir. 1994) ........................................................................................5

*Berkebile v. Outen*,
426 S.E.2d 760 (S.C. 1993) ................................................................................... 8-9

*Boyer v. Snap-On Tools Corp.*,
913 F.2d 108 (3d Cir. 1990)................................................................................17, 20

*Bullard v. Burlington N. Santa Fe Ry. Co.*,
535 F.3d 759 (7th Cir. 2008) ....................................................................................15

*Burrell v. Bayer Corp.*,
918 F.3d 372 (4th Cir. 2019) ..............................................................................3, 5, 9

*Canela v. Costco Wholesale Corp.*,
971 F.3d 845 (9th Cir. 2020) ..............................................................................13, 14

*Coatney v. Ancestry.com DNA, LLC*,
93 F.4th 1014 (7th Cir. 2024) ...................................................................................18

*Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*,
617 S.W.3d 792 (Ky. 2020)..................................................................................14, 17

*DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*,
540 F.2d 681 (4th Cir. 1976) ....................................................................................18

*Diaz v. Sheppard*,
85 F.3d 1502 (11th Cir. 1996) ....................................................................................5

*Empire Healthchoice Assurance Inc. v. McVeigh*,
547 U.S. 677 (2006)...........................................................................................1, 3, 7

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)......................................................................................... 13-14

*Fair Gaming Advocs. MA LLC v. VGW Holdings Ltd.*,
    2024 WL 5279408 (Mass. Super. Ct. Dec. 12, 2024)........................................15

*Fed. Nat'l Mortg. Ass'n v. LeCrone*,
    868 F.2d 190 (6th Cir. 1989) ............................................................................9

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
    463 U.S. 1 (1983)................................................................ 3, 5, 6, 9-10, 19

*Futurama Imp. Corp. v. Kaysons Int'l of Miami, Inc.*,
    304 F. Supp. 999 (D.P.R. 1969).......................................................................18

*Gebran v. Wells Fargo Bank, N.A.*,
    2016 WL 7471292 (C.D. Cal. Dec. 28, 2016) ............................................. 17-18

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*,
    446 U.S. 318 (1980).........................................................................................12

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005)............................................................... 1-2, 3, 4, 6, 8

*Hartley v. CSX Transp., Inc.*,
    187 F.3d 422 (4th Cir. 1999) ...........................................................................16

*Humphrey v. Viacom, Inc.*,
    2007 WL 1797648 (D.N.J. June 20, 2007)......................................................17

*Justice v. The Pantry,*
    518 S.E.2d 40 (S.C. 1999) ................................................................................1

*LG Display Co. v. Madigan*,
    665 F.3d 768 (7th Cir. 2011) ...............................................................10, 12, 13

*Marshall v. Manville Sales Corp.*,
    6 F.3d 229 (4th Cir. 1993) ...............................................................................16

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005).........................................................................................19

*Mayor & City Council of Baltimore v. BP P.L.C.*,
31 F.4th 178 (4th Cir. 2022) ...................................................................................... 4-5, 6

*Merrell Dow Pharms. Inc. v. Thompson*,
478 U.S. 804 (1986)...................................................................................................5

*Metro. Life Ins. Co. v. Taylor,*
481 U.S. 58 (1987)...............................................................................................3, 4, 5

*Miceli v. Smith & Nephew, Inc.*,
2023 WL 21016 (S.D. Fla. Jan. 3, 2023)...........................................................18

*Minnesota by Ellison v. Am. Petroleum Inst.*,
63 F.4th 703 (8th Cir. 2023) ..............................................................................11

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
571 U.S. 161 (2014)..................................................................................10, 12

*Morgan Cnty. War Mem'l Hosp. ex rel. Bd. of Dirs. of War Mem'l Hosp. v. Baker*,
314 F. App'x 529 (4th Cir. 2008) .......................................................................7, 8

*Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*,
954 F.3d 831 (6th Cir. 2020) .................................................................. 11-12, 14

*Ormet Corp. v. Ohio Power Co.*,
98 F.3d 799 (4th Cir. 1996) .......................................................................... 6-7

*Proctor v. Whitlark & Whitlark, Inc.*,
778 S.E.2d 888 (S.C. 2015) ...................................................................................8

*Purdue Pharma L.P. v. Kentucky*,
704 F.3d 208 (2d Cir. 2013)....................................................................10, 12

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025)...................................................................3, 6, 9, 10, 19

*Sawyer v. Smith*,
497 U.S. 227 (1990)...................................................................................1

*Spencer v. Specialty Foundry Prods. Inc.*,
953 F.3d 735 (11th Cir. 2020) ................................................................13, 15

*Structural Metals, Inc. v. S & C Elec. Co.*,
    590 F. App'x 298 (5th Cir. 2014) .................................................................................18

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ......................................................................................................14

*W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*,
    646 F.3d 169 (4th Cir. 2011) ...................................................................................10, 12

*Warthman v. Genoa Twp. Bd. of Trs.*,
    549 F.3d 1055 (6th Cir.  2008) .....................................................................................19

*Washington v. Chimei Innolux Corp.*,
    659 F.3d 842 (9th Cir. 2011) ........................................................................11, 12, 13, 14

*Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, LLC*,
    2020 WL 798082 (M.D. La. Feb. 18, 2020)....................................................................7

## STATUTES

Class Action Fairness Act,

    28 U.S.C. § 1332(d)................................................................................... 2, 10, 11-12

S.C. Code Ann. § 15-3-570 (2025) .......................................................................................15

S.C. Code Ann. § 32-1-10.....................................................................................................4

S.C. Code Ann. § 32-1-20...................................................................................................4, 14

18 U.S.C. § 1084(a) ..............................................................................................................4

28 U.S.C. § 1331 ...............................................................................................................1, 3

28 U.S.C. § 1332 ..............................................................................................................2, 15

28 U.S.C. § 1447(c) .........................................................................................................19, 20

## OTHER MATERIALS

S. Rep. No. 109-14 (2005)...................................................................................................14

## SUMMARY OF ARGUMENT

On June 11, 2025, South Carolina Gambling Recovery LLC ("Plaintiff") brought a quintessential state-court case against a group of companies offering illegal gambling products in South Carolina. It filed a single-count complaint in the Court of Common Pleas in Oconee County alleging violations of a South Carolina statute, brought in its own name against a group of non-diverse defendants. It is the sort of case the South Carolina judiciary, a "coequal part[] of our national judicial system," is well-equipped to handle. *Sawyer v. Smith*, 497 U.S. 227, 241 (1990). And it is the sort of case that South Carolina courts have long handled without federal removal coming into play. *See*, *e.g.*, *Justice v. The Pantry,* 518 S.E.2d 40, 42 (1999)

But the defendants to this action (collectively, "Defendants") took a different view. On October 7, they filed two separate notices of removal. Robinhood Derivatives LLC and Robinhood Markets, Inc., filed one notice to which all then-served Defendants consented (collectively, "Robinhood Defendants"). *See* Case No. 8:25-cv-12859-BHH (D.S.C.), Dkt. No. 1 at 1 ("Robinhood NOR"). Kalshi Inc., KalshiEx LLC, Kalshi Klear Inc., and Kalshi Klear LLC (collectively, "Kalshi Defendants") filed another notice, to which Webull Corp., Susquehanna International Group, LLP, and Susquehanna Government Products, LLP, consented in part. *See* Case No. 8:25-cv-12867-BHH (D.S.C.), Dkt. No. 1 at 1 ("Kalshi NOR"). This Court consolidated both dockets.

Defendants remove on three grounds. None establishes this Court's jurisdiction.

*First*, both notices of removal assert federal-question jurisdiction, 28 U.S.C. § 1331. But no federal question appears on the face of Plaintiff's well-pleaded complaint. Nor does this case fall within the "slim category" of other cases, *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 701 (2006), over which this Court may exercise federal-question jurisdiction, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005). While Defendants

1

insist that they operate on federally regulated platforms and that they have not violated the federal Wire Act, those claims go only to their potential affirmative defenses—something this Court may not consider when assessing jurisdiction. Even assuming those issues were "necessarily raise[d]" by the Complaint, neither would be "substantial." *Id.* And exercising jurisdiction here would only undermine the balance Congress established between the federal and state judiciaries.

*Second*, both notices of removal invoke the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). This argument confounds. The case is not a class action in form or function. Plaintiff is an individual company suing as a relator in its own name and for its own benefit. Plaintiff has not attempted to satisfy—and could not satisfy—the traditional elements required by Federal Rule of Civil Procedure 23. That fact alone forecloses CAFA's application. Nor does Plaintiff's suit qualify as a mass action for purposes of CAFA. It does not involve the coordinated, parallel litigation of 100 or more claims. Even looking past that definitional mismatch, this litigation falls within at least two statutory carveouts to CAFA's application.

*Third*, Kalshi Defendants (alone) invoke traditional diversity jurisdiction, 28 U.S.C. § 1332—despite acknowledging that three separate defendant entities share citizenship and defeat complete diversity. Kalshi Defendants allege that *each* of those non-diverse entities was fraudulently joined. But this argument has multiple fatal flaws. For example: Against one non-diverse Defendant, the best Kalshi Defendants can argue (at 16-17 & n.13) is that Plaintiff's claims against "all Defendants" are "dubious" on the merits. But even taking that claim at face value— which this Court should not, for many reasons—that argument does not support fraudulent joinder.

All that fully justifies remand to state court pursuant to 28 U.S.C. § 1447(c). More, it warrants the award of Plaintiff's costs and attorneys' fees, as authorized by that statute.

**ARGUMENT**

### I.    This Court Lacks Federal-Question Jurisdiction

Defendants justify removal under federal-question jurisdiction.  *See* 28 U.S.C. § 1331. Traditionally, "a [case] arises under federal law" *only* when an issue of federal law "appear[s] on the face of a well-pleaded complaint."  *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). Federal-question jurisdiction otherwise extends only to a "slim category" of cases, *Empire Healthchoice*, 547 U.S. at 701, where (1) "a state-law claim necessarily raise[s] a stated federal issue"; (2) that issue is "actually disputed and substantial"; and (3) "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," *Grable*, 545 U.S. at 314-15.

The *Grable* exception applies only "[o]n rare occasions" and comes with important limitations. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025).  *See also Burrell v. Bayer Corp.,* 918 F.3d 372, 380 (4th Cir. 2019) (recognizing that this "exception" applies to a "slim category" of cases).  Chief among them, "the determination of jurisdiction" must be "based only on the allegations in the plaintiff's 'well-pleaded complaint'—not on any issue the defendant may raise."  *Royal Canin*, 604 U.S. at 26.  Thus, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."  *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13-14 (1983).  And the case must present "a nearly 'pure issue of [federal] law,' one 'that could be settled once and for all and thereafter would govern numerous [similar] cases.' "  *Empire Healthchoice*, 547 U.S. at 700 (citation omitted).

Here, Plaintiff advances only a single cause of action, arising under South Carolina's Statute of Anne.  That statute provides that, if any person, at "any time or sitting," loses more than

3

the "value of fifty dollars" either by playing "any . . . game whatsoever or by betting on the sides" of those who play games may sue within three months to "recover the money or goods" plus the "costs of suit." S.C. Code Ann. § 32-1-10.  Should those three months expire, a separate provision states that "any other person" may "sue for and recover the same and treble the value" of that gambler's losses, plus the "costs of suit, against such winner or winners," with "the one moiety" going to "the person that will sue" and "the other moiety" going to "the county in which the offense shall have been committed." *Id.* § 32-1-20.  Nothing in that provision requires federal law.  *See Taylor*, 481 U.S. at 63.

Defendants nevertheless seek to fit within the narrow exception defined in *Grable*.  *See* Robinhood NOR 2-4; Kalshi NOR 25-27.  Robinhood Defendants cite (at 3) certain cases describing the Statute of Anne as permitting recovery for "illegal" gambling losses.  And Kalshi Defendants argue (at 26) that, because South Carolina's statute permits only recovery for "gambling" losses, resolution of this claim "necessarily turn[s] on the federal issue of whether event contracts are unlawful 'gambling activities' that are 'not authorized by federal law' within the scope of the Statute of Anne or are swap transactions regulated exclusively by the CFTC."

Both notices of removal also emphasize an allegation in the Complaint (at ¶¶ 55-57) that Defendants' event-contract offerings violate the federal Wire Act, 18 U.S.C. § 1084(a).  *See* Robinhood NOR 3; Kalshi NOR 28.  These issues, they say, could all give rise to discussion of federal law at some indefinite future time.

Defendants do not come close to satisfying *Grable*'s demanding standard.

**1.**  This case does not "*necessarily* raise" any federal question.  *Grable,* 545 U.S. at 314 (emphasis added).  A "federal issue is 'necessarily raised' only when a federal question is a 'necessary element' of one of the pleaded state-law claims within a plaintiff's complaint." *Mayor*

4

*& City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 209 (4th Cir. 2022). But whether federal law authorizes Defendants' offerings is not part of Plaintiff's case-in-chief. *Taylor*, 481 U.S. at 63. And federal preemption is "an affirmative defense" that the defendants bear "[t]he burden of establishing." *Burrell*, 918 F.3d at 382 n.3.

But spotting federal issues in affirmative defenses does not suffice. It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 13-14.

And even if this Court concluded that one or more elements of the Statute of Anne *did* incorporate federal securities law principles, that still would not "necessarily raise" a federal question. The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). "If it were, then innumerable claims traditionally heard in state court would be funneled to federal court instead, raising serious federal-state conflicts." *Burrell*, 918 F.3d at 380 (internal quotation omitted). Courts have recognized, for example, that a case does "not arise under federal law for purposes of federal question jurisdiction, even though elements of [the] state law claim included . . . failure to comply with, federal securities laws." *Diaz v. Sheppard*, 85 F.3d 1502, 1505-06 (11th Cir. 1996); *see also Berg v. Leason*, 32 F.3d 422, 426 (9th Cir. 1994) (similar).

At best, then, Defendants must invoke federal law as an affirmative defense—either by claiming that some provision of South Carolina law provides safe harbor to federally regulated entities, or else by arguing that federal law preempts South Carolina's own gambling restrictions. But neither move could justify removal under *Grable*. It is "settled law that a case may not be

5

removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 13-14; *see also Royal Canin*, 604 U.S. at 26 (noting jurisdiction must be "based *only* on the allegations in the plaintiff's 'well-pleaded complaint'—not on any issue the defendant may raise" (emphasis added)).

Defendants' Wire Act theory fares no better. Plaintiff included allegations about that act in its Complaint *only* to head off at the pass one of Defendants' possible affirmative defenses. That decision has no jurisdictional consequences: It does not matter "if [a] defense is anticipated in the plaintiff's complaint," and it would not matter "even if both parties admit[ted] that the" defense was "the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 13-14. Of course, the Wire Act is far from "the only question truly at issue." In truth, Plaintiff could litigate this case to completion without once raising it again. After all, if Defendants raised federal authorization as a defense, Plaintiff would have various other counterarguments available to it—including ones wholly unrelated to federal law. The Wire Act may therefore not even be "raised" again, much less "necessarily raise[d]." *Grable*, 545 U.S. at 311, 314.

**2.** Even if the issues involving Defendants' affirmative defenses "necessarily raise[d]" a federal question, they still would not be "substantial" enough to sustain removal. "The substantiality question 'looks . . . to the importance of the issue to the federal system as a whole.' And to strike a balance between federal and state judicial responsibilities, a federal court must ensure that it gives leeway to States in areas where they possess 'special responsibility[ies].'" *BP P.L.C.*, 31 F.4th at 209 (cleaned up). In other words, the court "must determine whether the dispute is one that Congress intended federal courts to resolve, taking into account the historical reasons

6

for establishing federal courts." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996).

The Fourth Circuit has recognized that three factors assist in deciding substantiality: whether the dispute "centers on the actions of private parties"; whether resolution of the federal question is "dispositive"; and whether resolution of the federal question "would be controlling in 'numerous' cases." *Morgan Cnty. War Mem'l Hosp. ex rel. Bd. of Dirs. of War Mem'l Hosp. v. Baker*, 314 F. App'x 529, 536 (4th Cir. 2008).

Here, each of those considerations cuts against federal-question jurisdiction.

*First*, this case "centers on the actions of private parties." *Id.* The government is not a party and "there is not an express or implied challenge of a specific federal agency action." *Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, LLC*, 2020 WL 798082, at *25 (M.D. La. Feb. 18, 2020). And whether or not certain private corporations have violated a South Carolina law imposing liability for certain types of betting is not an issue with far-reaching implications.

*Second*, resolution of the federal question is not dispositive; in other words, "there is not a pure issue of law at stake." *Id. See also Empire Healthchoice*, 547 U.S. at 700 (recognizing that substantial issues of federal law are raised when there is a "nearly 'pure issue of law' " that "could be settled once and for all and thereafter would govern" the area of federal law). That is in contrast to "the sorts of federal issues the Supreme Court has deemed substantial" such as those where "the decision depended upon the determination of the constitutional validity of an act of Congress" or a dispute "centered on the action[s] of a federal agency . . . and [their] compatibility with a federal statute." *AST & Sci. LLC v. Delclaux Partners SA*, 143 F.4th 1249, 1254 (11th Cir. 2025) (cleaned up) (citing cases).

*Third*, any outcome in this case will not be "controlling in 'numerous' cases." *Baker*, 314

7

F. App'x at 536.  Defendants' liability here will depend on how South Carolina state law will categorize their conduct and offerings.  A holding here will not offer much insight to corporations offering distinct (lawful) products in other jurisdictions.  And because Plaintiff's lawsuit names the major players in the event-contract space in South Carolina, there is limited potential for further litigation under South Carolina's Statute of Anne, further diminishing the value of keeping the case in federal court.

3.  If, however, this Court found the above requirements satisfied, *Grable* removal would still be inappropriate because a "federal forum" would disrupt the "congressionally approved balance of federal and state judicial responsibilities."  545 U.S. at 314.  Congress "ha[s] made no provision for a federal cause of action" permitting the recovery of unlawful gambling losses, so it is unlikely that it "would have meant to welcome any state-law tort case implicating federal law" into federal court.  *Id.* at 318-19.  And exercising jurisdiction here would deprive South Carolina courts of the chance to interpret the scope of their own anti-gambling regulations, merely because federal law may *also* regulate some aspects of certain Defendants' conduct.

4.  Defendants' counterarguments are unavailing.  Robinhood Defendants cite (at 3) cases describing South Carolina's Statute of Anne as redressing only "illegal" gambling.  But none of those cases so much as suggest that a plaintiff must prove, as part of its case-in-chief, that Defendants are *not* exempted from liability under some other provisions of South Carolina or federal law.  *Proctor v. Whitlark & Whitlark, Inc.*, 778 S.E.2d 888, 890 (S.C. 2015), for example, held that the South Carolina legislature "enacted specific gambling loss statutes as the exclusive remedy for a gambler seeking recovery of losses sustained by illegal gambling" and thus such claims cannot be brought under the South Carolina Unfair Trade Practices Act.  In fact, the South Carolina Supreme Court has explicitly recognized that, "[i]n reading § 32-1-10, it is clear that no

8

requirement for an illegal game exists as an element for recovery of a fifty dollar or greater gambling debt." *Berkebile v. Outen*, 426 S.E.2d 760, 763 (S.C. 1993).

Of course, even if establishing illegality was a required element of Plaintiff's case (and it is not) that still would not "necessarily raise" a *federal* question for purposes of *Grable*. Plaintiff could argue that Defendants failed to satisfy that condition as a matter of state law. *See supra* at 4. And, in any event, even if Plaintiff had to show Defendants' non-compliance with federal securities laws as an element of its case-in-chief, that still would fail to satisfy *Grable*'s demanding standard. *See supra* at 5.

Defendants also make much of the fact that the Complaint includes allegations that Defendants' offerings violate the federal Wire Act. *See* Robinhood NOR 3; Kalshi NOR 28. But again, that is not an element of Plaintiff's case-in-chief, and Plaintiff included those allegations only to anticipate an *affirmative defense* that Defendants raise. This Court cannot "consider affirmative defenses that might be anticipated in the complaint," even if the Complaint expressly contemplates those affirmative defenses and discusses federal law in the process. *Burrell*, 918 F.3d at 381; *Royal Canin*, 604 U.S. at 26 (noting jurisdiction cannot be based on "any issue the defendant may raise").

Defendants also cite various federal statutory and regulatory provisions which they claim may apply to their event contract offerings. *See*, *e.g.*, Kalshi NOR 27 (citing 7 U.S.C. §§ 2(a)(1)(A); 1a(47)(A)(ii)); Robinhood NOR 3 (citing 7 U.S.C. §§ 7a-2(c)(1); 17 C.F.R. § 40.2). But "reliance upon federal regulations" as defenses does not confer federal-question jurisdiction. *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 194 (6th Cir. 1989). And even if Defendants argued (they have not) that those regulations are so pervasive as to amount to field preemption, that *still* would not furnish a basis for removal. *See Franchise Tax Bd.*, 463 U.S. at 14 (noting "a

9

case may not be removed to federal court on . . . the defense of preemption"); *Royal Canin*, 604 U.S. at 26 (citing *Franchise Tax Bd.*). Thus, the Court lacks federal-question jurisdiction.

## II.     Defendants Improperly Removed Under the Class Action Fairness Act

Defendants also justify removal under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). That statute "loosened the requirements for diversity jurisdiction" in light "Congress' overriding concern . . . with class actions" and "certain requirements of federal diversity jurisdiction" that "had functioned to 'kee[p] cases of national importance' in state courts rather than federal courts." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165, 173 (2014) (quoting CAFA § 2). Under CAFA, a federal court has original jurisdiction over a class action when (1) there is *minimal* diversity of citizenship between the parties; (2) the aggregate amount in controversy exceeds $5 million; and (3) the proposed class contains at least 100 members. 28 U.S.C. § 1332(d)(2)-(6).

CAFA defines the phrase "class action[s]" narrowly, to include only a "civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons *as a class action*." 28 U.S.C. § 1332(d)(1)(B) (emphasis added). Thus, for CAFA to apply: the class action must either be brought under Rule 23 or "filed under a '*similar* State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" *W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174 (4th Cir. 2011) (quoting 28 U.S.C. § 1332(d)(1)(B)). A statute is "similar" to Rule 23 "if it closely resembles Rule 23 or is like Rule 23 in substance or in essentials." *Id*.

Every circuit to have considered the issue has taken that view. *LG Display Co. v. Madigan*, 665 F.3d 768, 771-72 (7th Cir. 2011); *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 215-17 (2d Cir. 2013) (because case "was filed not by a class representative on behalf of similarly-situated

10

plaintiffs," CAFA did not apply); *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 837 (6th Cir. 2020) (CAFA does not apply where suit does "not satisfy the core requirements of numerosity, commonality, [and] typicality"); *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 717 (8th Cir. 2023) (where a statute "does not provide a similar mechanism to Rule 23," a "lawsuit is not a removable 'class action' under CAFA"); *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 849 (9th Cir. 2011) (to be removable as a class action under CAFA, "[a] state action must be filed under a statute that is both 'similar' to Rule 23 *and* authorizes an action 'as a class action'").

CAFA's loosened diversity requirements also extend to certain other statutorily prescribed "mass action[s]." But to qualify, a lawsuit must be one "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). CAFA then "excludes" from that definition of "mass action[s]" (1) "any civil action in which . . . all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State," *id.* § 1332(d)(11)(B)(ii), (I); and (2) "any civil action in which" the claims are not asserted "on behalf of individual claimants or members of a purported class," *id.* § 1332(d)(11)(B)(ii), (III).

Here, Defendants' CAFA removal theory does not survive a glance at the Complaint's caption, much less a skim of its contents. Plaintiff has not brought a class action in form or in function. Rather, "this action is brought by a single entity." *Nessel*, 954 F.3d at 836. Because Plaintiff does not allege "to have [itself] suffered any injury at the hands of Defendants or to otherwise assert claims that are typical to" the gamblers who suffered injury, "the core requirements of Rule 23 are not satisfied." *Id.* at 836. And, notably, Plaintiff did not "join any of

11

the affected consumers as named plaintiffs in [its] lawsuit." *Id.* at 836.

It is even more obvious that Plaintiff has not brought a qualifying "mass action." The Complaint does not involve multiple "persons" seeking monetary relief in parallel, as CAFA requires. 28 U.S.C. § 1332(d)(11)(B)(i); *see AU Optronics*, 571 U.S. at 168 ("To start, the statute says '100 or more persons,' not '100 or more named or unnamed real parties in interest.'"). Even overlooking CAFA's "plain text," its express limitations on mass actions would exempt this litigation. The gambling losses Plaintiff seeks to collect on each arose from an "occurrence in the State" (in the form of a wager placed by South Carolina residents on Defendants' platforms), and each loss "resulted in injuries in that State" only. 28 U.S.C. § 1332(d)(11)(B)(ii)(I). Additionally, the claims are asserted by a single entity suing in its own name and are not asserted "on behalf of individual claimants or members of a purported class," *id.* § 1332(d)(11)(B)(ii)(III).

Notably, even other "representative" suits do not qualify for CAFA removal where they do not satisfy the requirements of Rule 23. It follows, *a fortiori*, that Plaintiff's transparently non-representative suit cannot fall within CAFA's sweep either. A wealth of precedent supports this point. For example: Every "circuit court to have squarely considered the question" has concluded that representative actions brought by state attorneys general on behalf of their citizens do not qualify as "class actions within the meaning of CAFA." *Chimei Innolux*, 659 F.3d at 848-49; *see, e.g.*, *Nessel*, 954 F.3d at 837-38; *Purdue*, 704 F.3d at 216; *McGraw*, 646 F.3d at 173-79; *LG Display Co.*, 665 F.3d at 772.

The same principle applies also to government agency suits brought in a representative capacity. *See, e.g.*, *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 333-34 & n.16 (1980) ("[T]he EEOC may . . . seek specific relief for a group of aggrieved individuals without first obtaining class certification."). It applies to suits brought under California's Private Attorneys General Act (a

12

close analogue to the Statute of Anne)—even where the *qui tam* relator purports to proceed "on behalf of" other citizens and captions the complaint a "Class Action." *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 850-55 (9th Cir. 2020). And it applies where corporations assigned the legal claims of numerous individuals sue to recover on each in a single action. *Atlas Data Privacy Corp. v. Blackbaud, Inc.*, 757 F. Supp. 3d 605, 610, 618-22 (D.N.J. 2024). Courts have similarly rejected claims that representative actions qualify as "mass action[s]" under CAFA, on the rare occasion a litigant suggests otherwise. *See, e.g.*, *LG Display Co.*, 665 F.3d at 772.

Defendants rest their argument for CAFA removal on a misreading of a single clause in the Complaint, which states that "[u]pon information and belief, thousands of individuals within South Carolina have lost—and continue to lose—more than $50 at any single time or sitting by playing at games of chance (i.e., gambling) with Defendants." Compl. ¶ 67; *see* Robinhood NOR 5; Kalshi NOR 21-22. But an allegation that third parties suffered loss does not mean that Plaintiff represents those third parties. Even if it did, stray language in a complaint could not override Plaintiff's deliberate choice not "to join any of the affected [gamblers] as named plaintiffs in [its] lawsuit." *Nessel*, 954 F.3d at 836. And it would not matter even if Plaintiff did "represent" individual gamblers, as while "class actions are always representative actions," "representative actions are not necessarily class actions." *Chimei Innolux*, 659 F.3d at 848.

Kalshi Defendants offer certain other arguments, but they fare no better. They go on at length (at 20-21) about Congress's motives for passing CAFA, citing legislative history that suggests that "lawsuits that resemble a purported class action should be considered class actions." But this Court "'should not, cannot, and do[es] not use legislative history to navigate around what CAFA's plain text tells [it] to do." *Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 741 (11th Cir. 2020). *Cf. Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 ("But legislative history is not

13

the law.")

If anything, "federalism concerns" require rejecting CAFA's extension to edge cases absent a "clear statement" to the contrary. *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787 (2000). Congress's choice to meticulously define class actions and mass actions compels that view. *Chimei Innolux*, 659 F.3d at 848. And even taking the cited legislative history at face value, this case does not remotely "resemble a purported class action." S. Rep. No. 109-14, at 35 (2005).

Kalshi Defendants also suggest (at 22) that the Statute of Anne's condition that a third-party plaintiff cannot "bring suit until after the three-month period" creates "a procedure and imposes constraints 'similar' to Rule 23." Not nearly. When the Statute of Anne authorizes "any person" to sue after that period, it imposes none of the ordinary requirements of a class action. *See Nessel*, 954 F.3d at 835. Additionally, the third-party recovery provision is a different cause of action that requires the plaintiff to share its recovery with "the county in which the offense shall have been committed." S.C. Code Ann. § 32-1-20, much like the *qui tam* statutes that CAFA does not reach. *Canela*, 971 F.3d at 850-55.

Kalshi Defendants stress that contemporary Statute of Anne suits are sometimes pleaded as putative class actions. Kalshi NOR 22. Sometimes. But that is not the exclusive practice. *See*, *e.g.*, *Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*, 617 S.W.3d 792, 796 (Ky. 2020) (countenancing a State's "lawsuit to recover statutory treble damages for money lost by its citizens"). Moreover, those class actions generally seek to collect damages owed to the individual gamblers within the initial recovery window for gambling-related losses. Here, Plaintiff seeks to recover *only* for money outside South Carolina's three-month window.

Kalshi Defendants also gesture (at 23) toward certain "administrative difficulties" that they

14

believe require CAFA's application.  These purposivist arguments cannot override the statute's plain text, *Spencer*, 953 F.3d at 741, and they make little sense on their own terms.  There is no need for a "class-action-like mechanism[]" or for an adjudication of "each challenged transaction individually."  Kalshi NOR 23.  Instead, Plaintiff can seek discovery for all gambling-related losses in South Carolina that predate the three-month window by the prescribed one-year statute of limitations.  S.C. Code Ann. § 15-3-570 (2025).  And the fact that five other States must interpret the scope of their own Statutes of Anne hardly amounts to unworkable "clog[]," as Kalshi Defendants suggest (at 23).

As for the mass-action backup theory, Kalshi Defendants' own cited authority (at 23) undermines their position.  *Fair Gaming Advocs. MA LLC v. VGW Holdings Ltd.*, 2024 WL 5279408, at *2 (Mass. Super. Ct. Dec. 12, 2024), has nothing to do with CAFA, and instead offers (without explanation) that a corporate entity suing under a Statute of Anne "stand[s] in the shoes" of gamblers.  Even if Plaintiff's suit were representative in that way, though, it would not make the suit a mass action under CAFA.  And, in any event, Plaintiff's suit would fall within two of CAFA's statutory exemptions.  As for *Bullard v. Burlington Northern Santa Fe Railway Co.*, it suffices to note Plaintiff has not "proposed" a "trial covering 100 or more plaintiffs."  535 F.3d 759, 762 (7th Cir. 2008).  To read that language is to understand why Kalshi Defendants' theory falls flat.  CAFA does not apply here.

## III.   This Court Lacks Diversity Jurisdiction Because the Non-Diverse Entities Were Not Fraudulently Joined

Kalshi Defendants offer one final (and still-more-implausible) basis for removal.  They remove (at 10-13) under garden-variety diversity jurisdiction.  *See* 28 U.S.C. § 1332.  But this faces an obvious problem:  By Kalshi Defendants' own admission (at 5-6, 11-12), the parties lack complete diversity, which Section 1332 generally requires.  Three of the defendant entities—

Susquehanna International Group, LLP ("SIG"), Susquehanna Government Products, LLLP ("SGP"), and Webull Corp.—share Florida citizenship with South Carolina Gambling Recovery LLC. *Id.* Kalshi Defendants try to get around this by arguing that Plaintiff fraudulently joined each of those entities. That theory never gets off the ground.

"In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: '[T]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.'" *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993). "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999).

Defendants fall well short of satisfying that standard. Plaintiff had ample reason for naming each of the three contested entities. And if Defendants fail to make their case as to even one, their diversity-jurisdiction theory fails.

**SGP and SIG.** Kalshi Defendants concede (at 5-6) that SGP and SIG are "citizen[s] of Florida for purposes of diversity." Yet they insist those entities do not belong in this case because (in their opinion) Plaintiff's claims against those entities are "dubious" on the merits. *Id.* at 16-17 & n.13. This is not an actual argument for fraudulent joinder. *See*, *e.g.*, *Hartley*, 187 F.3d at 426 (recognizing that a plaintiff's claim "may not succeed ultimately, but ultimate success is not required to defeat removal. Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends").

16

The claims against SGP and SIG do not differ from the claims Plaintiff has brought against the other defendant entities. Kalshi Defendants concede as much: They argue (at 16-17 & n.13) that this supposed weakness on the merits is not limited to SGP and SIG but instead "is the case for *all* Defendants." (Emphasis added). They do not actually believe SIG or SGP (in particular) were fraudulently joined. They believe *all* Defendants should be dismissed for failure to state a claim. Kalshi Defendants, in other words, call upon this Court to "step[] . . . from the threshold jurisdictional issue [of fraudulent joinder] into a decision on the merits." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990). That is precisely what this Court may not do weighing the appropriateness of removal.

Nor do Kalshi Defendants' arguments on the merits impress. They cite (at 16) a lone opinion for the proposition that a Statute of Anne winner "must be a participant." *See Humphrey v. Viacom, Inc.*, 2007 WL 1797648, at *10 (D.N.J. June 20, 2007). But other, better-reasoned decisions point the other way. *See Brown*, 617 S.W.3d at 806-08. And, in any event, Plaintiff here *has* alleged that SGP and SIG "participa[te]" in gambling. Specifically, the complaint alleges that SGP and SIG in concert serve as "market maker[s]" for Kalshi, "buying and selling event contracts on the platform." Compl. ¶¶ 13-14. And it alleges that those "market makers" specifically "serve as counterparties to each wager" that South Carolina gamblers entered, directly "facing off against the State's residents in the process." *Id.* ¶ 28. In other words, SGP and SIG directly bet against and won money directly from South Carolina gamblers. That makes them "winners" under the Statute of Anne, even applying the Kalshi Defendants' crabbed reading.

*SIG.* Kalshi Defendants separately argue (at 18) that SIG is fraudulently joined as a parent company. But even where a complaint does not specifically allege the relationship between a parent and its subsidiary, that does not constitute fraudulent joinder where a plaintiff could

17

"*possibly* state a claim against" the parent, such as where it was not "*impossible* for [the parent] to [have] exercise[d] control" over the subsidiary in practice. *Gebran v. Wells Fargo Bank, N.A.*, 2016 WL 7471292, at *9 (C.D. Cal. Dec. 28, 2016) (emphases added); *see also Structural Metals, Inc. v. S & C Elec. Co.*, 590 F. App'x 298, 307 (5th Cir. 2014) (similar); *Miceli v. Smith & Nephew, Inc.*, 2023 WL 21016, at *3 (S.D. Fla. Jan. 3, 2023) (dismissing fraudulent joinder where parent company was alleged to have worked with subsidiary). Even mere recognition of the "interlocking business activities of parent and subsidiary corporations" can "warrant the conclusion that the parent corporation . . . is a proper party in interest." *Futurama Imp. Corp. v. Kaysons Int'l of Miami, Inc.*, 304 F. Supp. 999, 1004 (D.P.R. 1969).

Here, it is far from "impossible" that Plaintiff could collect against SIG. States may hold parent companies liable when they "disregard . . . the corporate fiction." *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685 (4th Cir. 1976). And the Complaint specifically alleges that the Susquehanna entities—in concert with each other—violated South Carolina's Statute of Anne in various ways. *See*, *e.g.*, Compl. ¶¶ 13, 14, 50, 52, 54. At minimum, Plaintiff is entitled to jurisdictional discovery into the interrelationship between Susquehanna entities, to ensure that Plaintiff has named all entities that could potentially be liable for the conduct described in the Complaint. *See*, *e.g.*, *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1023 (7th Cir. 2024) ("Jurisdictional discovery revealed that the Spanish companies, as parents of the American subsidiaries, 'were heavily involved in negotiating and approving the joint venture agreements.'"). Finally, even if SIG was improperly named, Kalshi Defendants concede that SGP engaged in the bookmaking and is a Florida citizen. That fact alone forecloses diversity jurisdiction.

*Webull.* Kalshi Defendants separately claim (at 14-16) that Webull Corp. is simply a

18

holding company, and that the specific misconduct Plaintiff alleged was carried out only by a wholly owned subsidiary, Webull Financial LLC.  But regardless whether Plaintiff amends its Complaint to add additional Webull entities, it is not fraudulent to *also* name the parent, Webull Corp.  For the reasons just explained, it is hardly "impossible" that Webull Corp. is itself liable under South Carolina's Statute of Anne.  *Supra* at 17-18.  In any event, nothing turns on whether it is.  SGP and SIG themselves foreclose diversity jurisdiction.

## IV.     This Court Should Award Costs and Fees to Plaintiff.

This Court's "order remanding the case" should "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  That relief is appropriate wherever "the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

None of Defendants' grounds for removal were "objectively reasonable."  Their invocation of federal-question jurisdiction depended *entirely* on points germane only to affirmative defenses, flouting decades of U.S. Supreme Court precedent in the process.  *See*, *e.g.*, *Royal Canin*, 604 U.S. at 26; *Franchise Tax Bd.*, 463 U.S. at 9-10.  And Plaintiff's "mention of" the federal Wire Act "in a carefully drafted complaint that pled only state-law claims" does not make Defendants' "basis for removal . . . 'objectively reasonable.'"  *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1064 (6th Cir.  2008).  That "reference . . . should be read in the context of the entire complaint," which gave Defendants ample context to "ascertain whether the reference states a federal cause of action or" (as here) "simply supports an element of a state claim."  *Id.*; *see id.* at 1059-64 (holding district court abused its discretion in denying fees based on Plaintiff's citation to federal law in its complaint).

Defendants' other grounds for removal are still more unreasonable.  They removed, under the Class Action Fairness Act, a case that is not a class (or mass) action in form or in function.

19

And the Kalshi Defendants' fraudulent-joinder theory faces too many problems to count. Among them: They argue SGP was fraudulently joined only because the case against it is "dubious" on the merits—a point not even germane to a fraudulent-joinder theory, *see Boyer*, 913 F.2d at 112, and a point they concede (at 16-17 & n.13) applies equally to "all Defendants," not just to SGP.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court remand this case to South Carolina state court, and that it enters an order "requir[ing] payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

Date: November 6, 2025                    Respectfully submitted,

Derek T. Ho (*pro hac vice* pending)
Geoffrey J.H. Block (*pro hac vice* pending)
KELLOGG, HANSEN, TODD, FIGEL &
    FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
gblock@kellogghansen.com

*/s/ Christopher Mills*
Christopher Mills
SPERO LAW LLC
557 East Bay Street #22251
Charleston, SC 29413
Tel: (843) 606-0640
cmills@spero.law

*Counsel for South Carolina Gambling Recovery LLC*

20